## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMES M. WHORTON,

        Plaintiff,

v.

SURJIT DINSA,

        Defendant.

Case No. 2:21-cv-11722-NGE-JJCG
District Judge Nancy G. Edmunds
Magistrate Judge Jonathan J.C. Grey

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

James M. Whorton brings this complaint under 42 U.S.C. § 1983 against Surjit Dinsa for violation of his First and Eighth Amendment rights. (ECF No. 1.) He also alleges that Dinsa was involved in a conspiracy to deprive him of his civil rights in violation of 42 U.S.C. §§ 1985 and 1986. *Id.* Whorton alleges that Dinsa's conduct amounted to gross negligence and intentional infliction of emotional distress. (*Id*. at PAGEID.4.) This matter is before the Court on Dinsa's motion for summary judgment (ECF No. 11). Whorton did not respond.

On October 1, 2021, District Judge Nancy G. Edmunds referred pretrial matters to the undersigned. (ECF No. 10.) For the following reasons, the

undersigned **RECOMMENDS** that Dinsa's motion for summary judgment be

**GRANTED**.

## I.    Background

### A. Whorton's Complaint

Whorton is an incarcerated person in custody of the Michigan Department of

Corrections (MDOC), challenging the conditions of his confinement at the

Woodland Center Correctional Facility. (ECF No. 1.) He alleges that Dinsa

violated his First Amendment and Eighth Amendment rights and that he conspired

to do so. *Id.* Whorton's claims stem from events at the Woodland Center Inpatient

Mental Health Facility where Dinsa treated him for severe mental illness. (ECF

No. 1, PAGEID.5.)

Whorton alleges that on August 12, 2019 ("August 12, 2019 allegations"),

Dinsa discontinued his psychiatric medication after a nurse claimed that Whorton

"cheeked"[1] his medications. (*Id.* at PAGEID.6.) As a result, Whorton claims that

he experienced severe mental distress. *Id*.

---

[1] "Cheek" is a colloquial term to describe the act of concealing medication in the mouth instead of swallowing it. *Cheeking*, *Free Dictionary*, https://medical-dictionary.thefreedictionary.com/cheeking (last visited Mar. 16, 2022; *see also Annabel v. Heyns, No.* 2:12-CV-13590, 2016 WL 4761604, at *4 (E.D. Mich. July 26, 2016), report and recommendation adopted, No. 12-13590, 2016 WL 4729561 (E.D. Mich. Sept. 12, 2016) (defining "cheeking" as "refusing to take . . . medication . . . in order to avoid its ingestion").

Whorton alleges that on October 7, 2019 ("October 7, 2019 allegations"), Dinsa prescribed him a high dosage of Thorazine,[2] and after an electrocardiography, Dinsa discovered that the medication caused serious heart complications. *Id*. Although Dinsa then placed Whorton on Coreg, a different medication, to alleviate these complications, Whorton claims that his heart problems continued. *Id.*

Whorton alleges that on October 15, 2019 ("October 15, 2019 allegations"), he was placed in self-restraints for two weeks even though he did not attempt to harm himself or become disruptive. *Id.* As a result of self-restraints, Whorton claims that he suffered body aches, stiffness, and mental distress. *Id.*

Whorton alleges that on November 15, 2019 ("November 15, 2019 allegations"), he filed a grievance which claimed that Coreg failed to cure the side effects of Thorazine (*Id.* at PAGEID.10.)

Whorton alleges that on December 1, 2019 ("December 1, 2019 allegations"), he filed a grievance regarding Thorazine's adverse side effects, which included erectile dysfunction. (*Id.* at PAGEID.7.) Whorton claims that Dinsa ignored his grievance, which MDOC later denied. *Id.*

---

[2] Thorazine is a psychotropic medication used to manage manifestation of psychotic disorders. *Chlorpromazine*, National Center for Biotechnology Information, https://pubchem.ncbi.nlm.nih.gov/compound/Chlorpromazine (last visited Mar. 23, 2022).

Whorton alleges that on December 11, 2019 ("December 11, 2019 allegations"), Dinsa's supervisor instructed Dinsa to re-prescribe Whorton's prior psychiatric medications after several episodes of self-injury. *Id*. Whorton stated that Dinsa did not prescribe Whorton his previous anti-depressant. *Id*.

Whorton alleges that on December 13, 2019 ("December 13, 2019 allegations"), Dinsa increased his dosage of Thorazine from 600 milligrams to 800 milligrams because of Whorton's history of assaulting prison guards. (*Id.* at PAGEID.8.) Whorton claims that this constituted a malicious act. *Id.*

Whorton alleges that on December 27, 2019 ("December 27, 2019 allegations"), Dinsa ordered that Whorton take Thorazine by mouth after it had been crushed and dissolved. *See id*. Whorton claims that taking crushed and dissolved Thorazine made his throat raw, numbed his taste buds, and caused a sore throat. *Id.*

Whorton alleges that on January 7, 2020 ("January 7, 2020 allegations"), he filed a grievance that Thorazine continued to cause health problems, including erectile dysfunction, but MDOC denied his grievance. *Id.*

Whorton alleges that on March 18, 2020 ("March 18, 2020 allegations"), he requested the address of the "supervising doctor" to write to her with his concerns about Dinsa, including that Dinsa may be experimenting with Whorton's brain with psychiatric medication. (*Id.* at PAGEID.9.)

4

Whorton alleges that on May 5, 2020 ("May 5, 2020 allegations"), he told Dinsa and other healthcare staff that he wanted to be re-prescribed his previous anti-depressant and taken off Thorazine because it was unhelpful. (*Id*. at PAGEID.9.) However, Whorton claims his concerns were disregarded and that his medications were never adjusted. *Id.*

Whorton alleges that on April 7, 2021 ("April 7, 2021 allegations"), he filed a grievance asserting that Thorazine caused breast growth and nipple secretions. *Id.* Whorton claims that he repeatedly discussed his concerns with healthcare staff, but this did not result in anything. *See id.*

On November 8, 2021, Dinsa moved for summary judgment based on Whorton's failure to exhaust administrative remedies. (ECF No. 11.) Whorton did not respond.

### B. MDOC Grievance Process

MDOC provides a three-step grievance process that prisoners must follow to exhaust administrative remedies. MDOC Policy Directive 03.02.130 (effective Mar. 18, 2019). Per MDOC policy, grievants must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id.* ¶ S.  Prior to Step I, a grievant must "attempt to resolve the issue with the staff member involved within two business days." *Id.* ¶ Q. If there is no resolution, the grievant may file a Step I grievance within five business days. *Id.* At Step II, a grievant may

appeal the denial of a Step I grievance within ten business days after receipt of the

Step I response. *Id.* ¶ DD. At Step III, a grievant may appeal the Step II denial

within ten business days after receipt of the Step II response. *Id.* ¶ HH. Grievances

at all steps are logged in a computerized tracking system. *Id.* ¶¶ X, EE, II.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(a), courts must grant motions for

summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that

a reasonable jury could return a verdict for the non-moving party." *Hedrick v.*

*Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, "[a] fact is material only

if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52 (citing

*Anderson*, 477 U.S. at 248) (internal citations omitted).

In reviewing a summary judgment motion, the Court must draw all

justifiable inferences in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88

(1986). The burden of demonstrating the absence of a genuine dispute of material

fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). The moving party bears this responsibility by identifying portions of

the record that show the absence of a genuine issue as to any material fact. *Id.* If

the moving party meets its burden, the burden then shifts to the nonmoving party to

establish "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

If the nonmoving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case," the moving party is then

entitled to summary judgment. *Id.* at 322.

## III.    Analysis

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all

available administrative remedies before filing an action about prison conditions.

42 U.S.C. § 1997e(a). The Supreme Court requires that a grievant exhaust all

administrative remedies before filing a lawsuit. *Jones v. Bock*, 549 U.S. 199, 211

(2007) ("There is no question that exhaustion is mandatory under the PLRA and

that unexhausted claims cannot be brought in court."). It is also "the prison's

requirements, and not the PLRA, that define the boundaries of proper exhaustion."

*Id.* at 218. Proper exhaustion entails "using all steps that the agency holds out, and

doing so *properly* (so that the agency addresses the issues on the merits)."

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (citation and

internal quotations omitted).

Failure to exhaust is an affirmative defense, so prisoners are "not required to

specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at

216. The burden thus rests on defendants to establish failure to exhaust. *Napier v.
Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). Once the defense of failure to
exhaust is raised, the grievant must "present 'significant probative evidence' to
defeat the motion for summary judgment." *Id.*

## A. Analysis

Dinsa argues that Whorton did not exhaust his administrative remedies
before filing his complaint. (ECF No. 11.) Dina, who bears the burden of proof,
provided Whorton's Step III grievance report. (ECF No. 11-1, PAGEID.167–188.)
According to the report, Whorton filed grievances that failed to comply with
MDOC's grievance procedures. For the reasons that follow, the Court finds that
Whorton did not exhaust administrative remedies for any grievance. Dinsa is
entitled to summary judgment for Whorton's lack of proper exhaustion.

### i.    Grievance No. WCC-19-08-0386-28e regarding August 12, 2019 allegations

On August 16, 2019, Whorton filed Grievance No. WCC-19-08-0386-28e
("Grievance 0386"), which asserted that Dinsa had discontinued Whorton's
psychiatric medications. (ECF No. 11-1, PAGEID.175, 278.) At Step I, MDOC
denied Grievance 0386. (*Id.* at PAGEID.279.) Whorton's Step II appeal deadline
was September 13, 2019, and MDOC did not receive Whorton's Step II appeal
until January 28, 2020. (*Id.* at PAGEID.275.) MDOC denied Whorton's Step II

appeal for untimeliness, and MDOC upheld this decision at Step III. (*Id.* at PAGEID.275, 277.)

If MDOC rejects a grievant's response for untimeliness, the grievant did not properly exhaust claims in accordance with the prison's grievance procedure. *Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013) (stating that a grievant must receive "merits-based responses at *each step*" of MDOC's grievance procedure for proper exhaustion). Since MDOC denied Whorton's Step II appeal for Grievance 0386 for untimeliness, Whorton failed to properly exhaust his administrative remedies. *Cook*, 531 F. App'x at 563.

### ii.     Grievance No. WCC-19-10-0504-28e regarding October 7, 2019 allegations

On October 11, 2019, Whorton filed Grievance No. WCC-19-10-0504-28e ("Grievance 0504"), which asserted that Dinsa prescribed him a high dosage of Thorazine that caused heart complications. (ECF No. 11-1, PAGEID.176, 301.) At Step I, MDOC denied Grievance 0504, finding that the prescription was consistent with Whorton's diagnosis. (*Id.* at PAGEID.302.) At Step II, MDOC denied Whorton's appeal for untimeliness. (*Id.* at PAGEID.300.) Whorton's Step III deadline was January 21, 2020, and MDOC did not receive it until February 4, 2020. (*Id.* at PAGEID.298.) MDOC accordingly denied Whorton's Step III appeal for untimeliness. (*Id.* at PAGEID.298.)

Since MDOC denied Whorton's Step II and III appeals for Grievance 0504 for untimeliness, Whorton failed to properly exhaust his administrative remedies. *Cook*, 531 F. App'x at 563.

### iii.   Grievance No. WCC-19-10-0518-28e regarding the October 15, 2019 allegations

On October 21, 2019, Whorton filed Grievance No. WCC-19-10-0518-28e ("Grievance 0518"), which asserted that "Acting Unit Chief Goastella" told Whorton that he could not be released from self-restraints after being restrained for two weeks. (ECF No. 11-1, PAGEID.177, 306.) Whorton did not name Dinsa at Step I of this grievance, but he did name Dinsa in his Step II appeal. (*Id.* at PAGEID.304, 306.) At Step I, MDOC denied Grievance 0518, having found that Whorton received treatment consistent with MDOC's mental health service policies and that continued self-restraints aligned with appropriate treatment. (*Id.* at PAGEID.307.) At Step II, MDOC upheld its decision. (*Id.* at PAGEID.305.) Whorton's Step III appeal deadline was January 4, 2020, and MDOC did not receive Whorton's Step III appeal until January 24, 2020. (*Id.* at PAGEID.303.) MDOC accordingly denied Whorton's Step III appeal for untimeliness. *Id.* The Court finds that Whorton failed to properly exhaust his administrative remedies.

Further, the Court notes, as asserted by Dinsa, Grievance 0518 did not name Dinsa at Step I. (ECF No. 11, PAGEID.159; ECF No. 11-1, PAGEID.304.) The

MDOC grievance process requires that grievants include the "[d]ates, times, places, and names of all those involved in the issue being grieved." MDOC Policy Directive 03.02.130 ¶ S (effective Mar. 18, 2019). Moreover, a plaintiff fails to exhaust administrative remedies against a defendant if the plaintiff does not name the defendant at Step I of the grievance. *Burnett v. Eelbode*, No. 18-12471, 2021 WL 1152998, at *5 (E.D. Mich. Mar. 26, 2021). Because Whorton did not name Dinsa at Step I of Grievance 0518, Whorton also failed to properly exhaust his administrative remedies on that basis.

Second, since MDOC denied Whorton's Step III appeal for untimeliness, Whorton did not properly exhaust his claims in accordance with MDOC's grievance procedure. *Cook*, 531 F. App'x at 563.

### iv.    Grievance No. WCC-19-11-0564-28e regarding November 15, 2019 allegations

On November 20, 2019, Whorton filed Grievance No. WCC-19-11-0564-28e ("Grievance 0564"), which asserted that Thorazine, which Dinsa had prescribed, caused him negative side effects and that he was prescribed Coreg to counteract those effects. (ECF No. 11-1, PAGEID. 178, 311.) At Step I, MDOC denied Grievance 0564, finding that the treatment was consistent with MDOC's mental health service policies. (*Id.* at PAGEID.312.) At Step II, MDOC upheld its decision. (*Id.* at PAGEID.310.) Whorton's Step III appeal deadline was January 4,

2020, and MDOC did not receive it until January 24, 2020. (*Id.* at PAGEID.308.) At Step III, MDOC accordingly denied Whorton's Step III appeal for untimeliness. *Id.*

Since MDOC denied Whorton's Step III appeal for untimeliness, Whorton failed to properly exhaust his administrative remedies. *Cook*, 531 F. App'x at 563.

v.   **Grievance WCC-19-12-0600-28A regarding December 1, 2019 allegations**

On December 2, 2019, Whorton filed Grievance WCC-19-12-0600-28A ("Grievance 0600"), which asserted that Dinsa prescribed Whorton a high dosage of Thorazine that caused negative side effects, including erectile dysfunction. (ECF No. 11-1, PAGEID.174, 249.) At Step I, MDOC denied Grievance 0600 for duplicating Grievance 0564. *Id.* At Step II, MDOC denied Whorton's Step II appeal for untimeliness. (ECF No. 11-1, PAGEID.248–249.) At Step III, MDOC affirmed its decision. (*Id.* at PAGEID.246.) The Court finds that Whorton failed to properly exhaust his administrative remedies.

First, the MDOC grievance policy requires grievances to be rejected "if it raises issues that are duplicative of those raised in another grievance filed by the grievant." MDOC Policy Directive 03.02.130 ¶ J(2). Here, Grievance 0600 did not comply with this policy because it duplicated Grievance 0564. (ECF No. 11-1, PAGEID.249, 311.) Since Grievance 0600 is duplicative of another grievance,

12

Whorton failed to exhaust his administrative remedies in compliance with MDOC policy. *Woodford*, 548 U.S. at 90.

Moreover, since MDOC denied Whorton's Step II appeal for untimeliness, Whorton did not properly exhaust his claims in accordance with MDOC's grievance procedure. *Cook*, 531 F. App'x at 563.

### vi.    Grievance WCC-19-12-0636-28e regarding December 11, 2019 allegations

On December 13, 2019, Whorton filed Grievance WCC-19-12-0636-28e ("Grievance 0636"), which asserted that Dinsa refused to re-prescribe Whorton his previous anti-depressant. (ECF No. 11-1, PAGEID.175, 268.) At Step I, MDOC denied Grievance 0636, finding that Dinsa's decision was consistent with Whorton's diagnosis. (*Id.* at PAGEID.269.) Whorton's Step I appeal deadline was January 10, 2020, and MDOC did not receive the Step I appeal until January 21, 2020. (*Id.* at PAGEID.265.) MDOC accordingly denied Whorton's appeal for untimeliness at Step II and upheld its decision at Step III. (*Id.* at PAGEID.265, 267.)

Since MDOC denied Whorton's Step II appeal for untimeliness, Whorton failed to properly exhaust his administrative remedies. *Cook*, 531 F. App'x at 563.

### vii.    Grievance No. WCC-19-12-0643-28e regarding December 13, 2019 allegations

On December 16, 2019, Whorton filed Grievance No. WCC-19-12-0643-28e ("Grievance 0643"), which asserted that Dinsa increased Whorton's Thorazine dosage at the request of MDOC officers. (ECF No. 11-1, PAGEID.175, 273.) At Step I, MDOC denied, finding that the dosage was consistent with MDOC's mental health service policies. (*Id.* at PAGEID.274.) Whorton's Step II appeal deadline was January 14, 2020, and MDOC did not receive the Step II appeal until January 22, 2020. (*Id.* at PAGEID. 270.) MDOC accordingly denied Whorton's appeal at Step II, for untimeliness and upheld its decision at Step III. (*Id.* at PAGEID.270, 272.)

Since Whorton's Step II appeal for Grievance 0643 was untimely, Whorton failed to properly exhaust his administrative remedies. *Cook*, 531 F. App'x at 563.

### viii.    Grievance No. WCC-20-01-0006-28i regarding December 27, 2019 allegations

On January 6, 2020, Whorton filed Grievance No. WCC-20-01-0006-28i ("Grievance 0006"), which asserted that Dinsa instructed Whorton to take his Thorazine crushed and that this caused a sore throat. (ECF No. 11-1, PAGEID.175, 283.) At Step I, MDOC denied Grievance 0006, finding that the medication instructions were consistent with MDOC's mental health service policies. (*Id.* at

14

PAGEID.284.) At Step II, MDOC affirmed its decision. (*Id.* at PAGEID.282.) At Step III, MDOC rejected Whorton's appeal for failure to attempt to resolve the issue with the staff before filing the grievance. (*Id.* at PAGEID.280.)

The MDOC grievance policy requires grievances to be rejected "if [t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance." MDOC Policy Directive 03.02.130 ¶ J(4). Here, Grievance 0006 did not comply with this policy because MDOC did not find a written attempt to resolve the issue in its electronic medical record. (ECF No. 11-1, PAGEID.280.) By failing to submit a healthcare request, prisoner kite,[3] or other written request, Whorton did not comply with MDOC policy. Whorton thus failed to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 90.

### ix.   Grievance No. WCC-20-01-0040-28e regarding January 7, 2020 allegations

On January 10, 2020, Whorton filed Grievance No. WCC-20-01-0040-28e ("Grievance 0040"), which asserted that he was experiencing erectile dysfunction. (ECF No. 11-1, PAGEID.174, 258.) The grievance did not mention Dinsa, nor did any of the subsequent appeals. (*Id.* at PAGEID.258, 256.) At Step I, MDOC denied Grievance 0040, finding that Whorton's medical and psychiatric needs were being

---

[3] A "kite" is an internal mailing that prisoners can send to prison officials, generally used to express complaints. *McCracken v. Haas*, 324 F. Supp. 3d 939, 943 n.1 (E.D. Mich. 2018)

met. (*Id.* at PAGEID.259.) Whorton's Step II appeal deadline was February 11, 2020, and MDOC did not receive it until February 14, 2020. (*Id.* at PAGEID.255.) At Step II, MDOC accordingly denied Whorton's appeal for untimeliness. (*Id.* at PAGEID.255, 257.) At Step III, MDOC affirmed its decision. (*Id.* at PAGEID.255.) The Court finds that Whorton failed to properly exhaust his administrative remedies.

First, since MDOC denied Whorton's Step II appeal for untimeliness, Whorton did not properly exhaust his claims in accordance with MDOC's grievance procedure. *Cook*, 531 F. App'x at 563.

Second, the MDOC grievance policy requires grievances to include the names of all those involved in the issue being grieved. MDOC Policy Directive 03.02.130 ¶ S. As discussed above, a plaintiff fails to exhaust administrative remedies against a defendant if the plaintiff does not name the defendant at Step I of the grievance. *Burnett*, 2021 WL 1152998, at *5. Because Whorton did not name Dinsa at Step I of Grievance 0040, Whorton failed to properly exhaust his administrative remedies.

### x. Grievance No. WCC-20-03-0205-12b4 regarding March 18, 2020 allegations

On March 20, 2020, Whorton filed Grievance No. WCC-20-03-0205-12b4 ("Grievance 0205"), which asserted that "Unit Chief Buryta" and "Social Worker

16

Smith" refused to give him the address of Dr. Bradshaw, the supervising psychiatrist who oversaw medications prescribed by Dinsa. (ECF No. 11-1, PAGEID.173, 244.) At Step I, MDOC denied Grievance 0205, finding it had no merit (*Id.* at PAGEID. PAGEID.245.) At Steps II and III, MDOC affirmed its decision. (*Id.* at PAGEID.241, 243.)

The MDOC grievance policy requires grievances to include the names of all those involved in the issue being grieved. MDOC Policy Directive 03.02.130 ¶ S. Grievance 0205 mentions Dinsa. (ECF No. 11-1, PAGEID.244). Whorton, however, did not mention Dinsa as the source of his grievance. Instead, Whorton's complaint was directed to the unit chief and social worker for not providing Dr. Bradshaw's address. *Id.* Because Whorton did not name Dinsa appropriately at Step I of Grievance 0205, Whorton failed to properly exhaust his administrative remedies. *Burnett*, 2021 WL 1152998, at *5.

xi.    **Grievance No. WCC-20-05-0330-28i regarding May 5, 2020 allegations**

On May 7, 2020, Whorton filed Grievance No. WCC-20-05-0330-28i ("Grievance 0330"), which asserted that he needed a medication adjustment and that Dinsa and an individual named Smith "blew [him] off" when Whorton raised his concerns. (ECF No. 11-1, PAGEID.172, 239.)  At Step I, MDOC denied Grievance 0330, finding that Whorton was being medicated in accordance with the

relevant policies. (*Id.* at PAGEID.240.) At Step II, MDOC affirmed its decision.

(*Id.* at PAGEID.238.) At Step III, MDOC rejected Whorton's appeal for failure to

attempt to resolve the issue with the staff before filing the grievance. (*Id.* at

PAGEID.236.)

The MDOC grievance policy requires grievances to be rejected if the

grievant fails to attempt to resolve the issue with staff prior to filing the grievance.

MDOC Policy Directive 03.02.130 ¶ J(4). Here, Grievance 0330 did not comply

with this policy because MDOC did not find a written attempt to resolve the issue

in its electronic medical record. (ECF No. 11-1, PAGEID.236.) By failing to

submit a healthcare request, prisoner kite, or other written request, Whorton did not

comply with MDOC policy. Whorton thus failed to properly exhaust his

administrative remedies. *Woodford*, 548 U.S. at 90.

### xii.    Grievance No. WCC-21-04-0340-28i regarding April 7, 2021 allegations

On April 15, 2021, Whorton filed Grievance No. WCC-21-04-0340-28i

("Grievance 0340"), which asserted that Thorazine was unhelpful and that he

wished to speak to Dr. Bradshaw about it. (ECF No. 11-1, PAGEID.170, 208.) At

Step I, MDOC denied Grievance 0340, finding that it was not meritorious. (*Id.* at

PAGEID.209.) At Step II, MDOC affirmed its decision. (*Id.* at PAGEID.207.)  At

Step III, MDOC re-affirmed its decision and concluded that Whorton failed to resolve the issue with the staff before filing the grievance. (*Id.* at PAGEID.205.)

As discussed above, MDOC policy requires the rejection of grievances if the grievant fails to attempt to resolve the issue with staff prior to filing the grievance. MDOC Policy Directive 03.02.130 ¶ J(4). Here, Grievance 0340 did not comply with this policy because MDOC did not find a written attempt to resolve the issue in its electronic medical record. (ECF No. 11-1, PAGEID.205.) By failing to submit a healthcare request, prisoner kite, or other written request, Whorton did not comply with MDOC policy. Whorton thus failed to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 90.

### xiii.   Grievance No. WCC-21-04-0338-28i regarding April 7, 2021 allegations

On April 15, 2021, Whorton filed Grievance No. WCC-21-04-0338-28i ("Grievance 0338"), which asserted that Thorazine caused several side effects, including excessive sleep, heart palpitations, breast growth, and nipple secretion. (ECF No. 11-1, PAGEID.170, 213.) At Step I, MDOC denied Grievance 0338, finding that it was not meritorious. (*Id.* at PAGEID.214.) At Step II, MDOC affirmed its decision, finding that Grievance 0338 was duplicative of Grievance 0340. (*Id.* at PAGEID.212.)  At Step III, MDOC re-affirmed its decision and concluded that Whorton failed to resolve the issue with the staff before filing the

grievance. (*Id.* at PAGEID.210.) The Court finds that Whorton failed to properly exhaust his administrative remedies.

First, MDOC policy requires grievances to be rejected if it raises the same issues as a previously filed grievance. MDOC Policy Directive 03.02.130 ¶ J(2). Here, Grievance 0338 did not comply with this policy because it duplicated Grievance 0340. Since Grievance 0338 is duplicative of another grievance, Whorton failed to exhaust his administrative remedies in compliance with MDOC policy. *Woodford*, 548 U.S. at 90.

Second, MDOC policy requires grievances to be rejected if the grievant fails to attempt to resolve the issue with staff prior to filing the grievance. MDOC Policy Directive 03.02.130 ¶ J(4). Here, Grievance 0338 did not comply with this policy because MDOC did not find a written attempt to resolve the issue in its electronic medical record. (ECF No. 11-1, PAGEID.210.) By failing to submit a healthcare request, prisoner kite, or other written request, Whorton did not comply with MDOC policy. Whorton thus failed to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 90.

## IV.   Conclusion

For the reasons above, the undersigned **RECOMMENDS** that Dinsa's

motion for summary judgment (ECF No. 11) be **GRANTED**.


Dated:   March 28, 2022                    s/**Jonathan J.C. Grey**
                                          Jonathan J.C. Grey
                                          United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 28, 2022.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager

22